UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| FAY BOYD | * | CIVIL ACTION |
| | * | NO. 2-14-cv-01260 F-3 |
| Plaintiff, | * | |
| VERSUS | * | JUDGE MARTIN L.C. FELDMAN |
| | * | |
| DEUTSCHE LUFTHANSA | * | MAG. DANIEL E. KNOWLES, III |
| AKTIENGESELLSCHAFT a/k/a | * | |
| and/or d/b/a LUFTHANSA GERMAN | * | |
| AIRLINES and DEUTSCHE | * | |
| LUFTHANSA AG a/k/a and/or d/b/a | * | |
| LUFTHANSA GERMAN AIRLINES | * | |
| | * | |
| Defendant | * | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Deutsche Lufthansa Aktiengesellschaft (a/k/a Deutsche Lufthansa AG, incorrectly identified as a separate entity and defendant in Plaintiff's Original Complaint) ("Lufthansa"), respectfully files this memorandum in support of its Motion for Summary Judgment against Plaintiff, Fay Boyd. Plaintiff has filed suit against Lufthansa under the Montreal Convention, claiming that she fell while disembarking from an international flight operated by Lufthansa, Flight 440. The Montreal Convention only permits recovery for an *"accident"* that occurs *"on board the aircraft"* or *"in the course of any of the operations of embarking or disembarking."*[1]

To determine whether an *"accident"* has occurred, the evidence must demonstrate that "(1) an unusual or unexpected event that was external to [the plaintiff] occurred, and (2) this event was a malfunction or abnormality in the aircraft's operation."[2] To determine whether a

---

[1] *See* Montreal Convention, Art. 17(1).
[2] *See Goodwin v. British Airways PLC*, 2011 WL 3475420 at *4 (D. Mass. 8/8/2011) (citing *Gotz v. Delta Air Lines, Inc.*, 12 F. Supp. 2d 199, 201 (D. Mass 1998)) (emphasis added).

claimant was in the process of *disembarking* at the time of injury, courts focus on three factors: (1) the passenger's activity at the time of the injury, (2) where the passenger was located, and (3) the extent to which the carrier was exercising control over the passenger at the moment of injury.[3]

Based on the foregoing, Plaintiff's claims against Lufthansa should be dismissed for the following reasons:

- Plaintiff has not suffered an "accident" as defined by the Montreal Convention because:
    - Ms. Boyd has testified that no one pushed or shoved her causing her to fall. Thus, her fall was not caused by an unusual or unexpected external event; and
    - Plaintiff has testified that there was nothing unusual about the disembarkment process on Flight 440, and she never asked anyone from the flight crew of Flight 440 for help disembarking or navigating the airport. Thus, her fall was not caused by a malfunction or abnormality in the aircraft's operations.
- Ms. Boyd fell near the Customs area which was a 10-15 minute walk from the airplane and in a corridor that is not controlled by Lufthansa. Thus, Plaintiff was not "disembarking" from Lufthansa Flight 440 at the time of her fall.

I.  **BACKGROUND**

On June 2, 2014, after traveling to Cairo, Egypt, Plaintiff returned to the United States via Lufthansa Flight No. 440 from Frankfurt, Germany to Houston, Texas.[4] Plaintiff was traveling with her husband (Marion Boyd), her daughter (Jennifer Pecot), and her granddaughter (Ashley Scheibal). Upon arriving at the George Bush Intercontinental Airport in Houston (the "Airport"), Ms. Boyd allegedly fell and broke her left hip.[5]

---

[3] *See Fedelich v. Am. Airlines*, 724 F. Supp. 2d 274, 284 (D.P.R. 2010) (relied upon by the Fifth Circuit in *Bridgeman*, 552 Fed. App'x at 297).
[4] *See* Exhibit A, Flight Itinerary; *see also* Exhibit B, Depo. of Fay Boyd at 27:18 – 28:4.
[5] *See* Exhibit C, Depo. of Marion S. Boyd at 50:21 – 51:12.

Ms. Boyd filed suit against Lufthansa under the Montreal Convention, alleging that she was knocked to the ground by another passenger while disembarking from Flight 440.[6] Despite those allegations, Ms. Boyd has testified that she does not recall anyone hitting her and causing her to fall.[7] As she further testified, "Nobody pushed me or hurt me or shoved me or anything like that."[8] None of her family members saw Ms. Boyd fall.[9]

Plaintiff has further testified that there was nothing unusual about the disembarkment process upon arriving at the Airport.[10] The flight attendants were on board the airplane while she deplaned from Flight 440.[11] Notably, although she experiences numbness or tingling in her feet after sitting for long periods of time, Ms. Boyd did not tell anyone on Flight 440 that she needed help getting off the plane or navigating the Airport, and no one at Lufthansa refused to help Ms. Boyd get off the plane or navigate the Airport.[12, 13]

Finally, Plaintiff has not (and cannot) offer any evidence that Lufthansa controlled the corridor in which Ms. Boyd fell.[14] Ms. Boyd's fall occurred approximately ten to fifteen minutes after exiting from the airplane.[15] As Ms. Scheibal explained, the fall occurred "pretty far" from the airplane: "[W]e had taken two terminals to get into the airport itself . . . [a]nd we had walked a good ways . . . [a]bout 10 to 15 minutes maybe."[16] Additionally, while arriving passengers may have been walking quickly through the corridor in which she fell, Ms. Boyd and

---

[6] *See* Complaint [Doc. 1] ¶¶ 4, 9.
[7] *See* Exhibit B, Depo. of Fay Boyd at 109:6-8.
[8] *See id.* at 127:6:10.
[9] *See* Exhibit C, Depo. of Marion Boyd at 35:23 – 36:12; Exhibit D, Depo. of Ashley Scheibal at 20:20-22; Exhibit E, Depo. of Jennifer Pecot at 29:12-15.
[10] *See* Exhibit B, Depo. of Fay Boyd at 83:8-18.
[11] *See id.* at 113:7-13.
[12] *See* Exhibit D, Depo. of Ashley Scheibal, at 13:2-6.
[13] *See* Exhibit B, Depo. of Fay Boyd at 82:17 – 83:7.
[14] *See* Exhibit B, Depo. of Fay Boyd at 98:12 – 99:1; Exhibit C, Depo. of Marion S. Boyd at 43:7-12; Exhibit D, Depo. of Ashley Scheibal at 25:5-9; Exhibit E, Depo. of Jennifer Pecot at 28:18-20.
[15] See Exhibit D, Depo. of Ashley Scheibal at 23:16 – 24:11.
[16] *See id.*

her family members who were on Flight 440 testified that no one was jogging or running through the corridor.[17]

## II. LAW AND ARGUMENT

### A. LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.[18] No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.[19] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[20]

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.[21] In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.[22] Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.[23]

### B. THE MONTREAL CONVENTION

The Montreal Convention is a multilateral treaty that "governs the rights and liabilities of passengers and carriers in international air transportation."[24] Therefore, the Montreal

---

[17] *See* Exhibit B, Dep. of Fay Boyd at 103:24 – 104:9; *see also* Exhibit C, Depo. of Marion Boyd at 44:12-20; Exhibit D, Depo. of Ashley Scheibal at 43:5-10; Exhibit E, Depo. of Jennifer Pecot at 28:4-13.
[18] *See Hamlin v. Blue Cross & Blue Shield of Louisiana*, 178 F. Supp. 2d 673, 678 (E.D. La. 2001) (Feldman, J).
[19] *See id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)).
[20] *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[21] *See id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).
[22] *See id.* (citing *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir.1992)).
[23] *See id.* (citing *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987)).
[24] *See Galbert v. W. Carribean Airways*, 715 F.3d 1290, 1292 (11th Cir. 2013).

Convention preempts state-law causes of action relating to international carriage of persons, baggage, and cargo.[25] This treaty unifies and replaces its predecessor, the Warsaw Convention, by harmonizing "the hodgepodge of supplementary amendments and intercarrier agreements."[26] Because a number of provisions of the Montreal Convention are taken directly from the Warsaw Convention, case law interpreting provisions of the Warsaw Convention applies to cases interpreting "substantively similar" provision of the Montreal Convention.[27]

The Montreal Conventions sets forth the specific conditions upon which a person may make a claim against an air carrier.  Specifically, Article 17 of the Montreal Convention provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.[28]

Therefore, the treaty permits recovery only for an "accident" that occurs "on board the aircraft" or "in the course of any of the operations of embarking or disembarking."

### 1. Plaintiff's Alleged Injuries Did Not Result From An "Accident."

A two prong test applies to determine whether an "accident" under the Montreal Convention occurred.[29]  In particular, the evidence must demonstrate that "(1) an unusual or unexpected event that was external to [the plaintiff] occurred, and (2) this event was a

---

[25] See *El Al Israel Airlines v. Tsui Yuan Tseng*, 525 U.S. 155, 176 (1999); *see also* Montreal Convention, Art. 29 ("[A]my action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . .").
[26] See *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 776, 789 (7th Cir. 2008).
[27] See *Best v. BWIA W. Indies Airways, Ltd.*, 581 F. Supp. 2d 359, 362 (E.D.N.Y. 2008).
[28] See Montreal Convention, Art. 17(1).
[29] See *Goodwin v. British Airways PLC*, 2011 WL 3475420 at *4 (D. Mass. 8/8/2011) (citing *Gotz v. Delta Air Lines, Inc.*, 12 F. Supp. 2d 199, 201 (D. Mass 1998)).

malfunction or abnormality in the aircraft's operation."[30]   As the Supreme Court of the United States has recognized, determining whether an "accident" under the Montreal Convention has occurred must "distinguish between an accident which is the cause of the injury and an injury which is itself an accident."[31]

        a.      **Plaintiff cannot demonstrate that her fall was caused by an external event.**

Here, no facts exist to support a claim that an "accident" occurred that caused Plaintiff's alleged injuries.  First, no evidence of an external event causing Ms. Boyd's fall exists.  None of Ms. Boyd's family members who were traveling with her saw her fall,[32] and Ms. Boyd, herself, testified that no one pushed her or caused her to fall at the Airport.[33]  Thus, no evidence exists that an event outside some internal condition of Ms. Boyd caused her fall.[34]

Indeed, Ms. Boyd suffers from numbness in her feet, especially after sitting for a long period of time.[35]  Nonetheless, after arriving at the Airport in Houston after an approximately ten hour flight from Frankfurt, Germany,[36] Ms. Boyd deplaned from Flight 440 without asking for help getting off the airplane or navigating the Airport.[37]  Far from being an "accident," the sworn testimony in this case demonstrates that Ms. Boyd's fall was caused by a condition internal to Ms. Boyd.  See *MacDonald v. Air Canada*[38] (finding that there was no basis to find that an

---

[30] See *id.* (quoting *Gotz*, 12 F. Supp. 2d at 201-02).
[31] See, e.g., *Padilla v. Olympic Airways*, 765 F. Supp. 835, 837 (S.D.N.Y. 1991).
[32] See Exhibit C, Depo. of Marion Boyd at 35:23 – 36:12; Exhibit D, Depo. of Ashley Scheibal at 20:20-22; Exhibit E, Depo. of Jennifer Pecot at 29:12-15.
[33] See Exhibit B, Depo. of Fay Boyd at 127:6:10.
[34] Because no external event caused Ms. Boyd's fall, the issue of whether the external event was unusual or unexpected is moot.  Nevertheless, Plaintiff testified that there was nothing unusual occurred while disembarking and that no one was running or jogging in the corridor in which she fell.  See *id.* at 83:8-18, 103:24 – 104:9; *see also* Exhibit C, Depo. of Marion Boyd at 44:12-20; Exhibit D, Depo. of Ashley Scheibal at 43:5-10; Exhibit E, Depo. of Jennifer Pecot at 28:4-13.
[35] See Exhibit D, Depo. of Ashley Scheibal, at 13:2-6.
[36] See *id.* at 16:15-17.
[37] See Exhibit B, Depo. of Fay Boyd at 82:17 – 83:7.
[38] 439 F.2d 1402 (1st Cir. 1971).

"accident" occurred where it was as reasonable to suppose that some internal condition caused Plaintiff's fall as that the fall was the result of any accident).

### b. **Plaintiff's fall does not relate to a malfunction or abnormality of the operations of the aircraft.**

With respect to the second prong of the accident analysis, the Supreme Court of the United States, in *Air France v. Saks*,[39] recognized that injuries related to the normal operation of the aircraft do not constitute an accident under the Montreal Convention.[40] In *Saks*, the plaintiff felt severe pressure and pain in her left ear as her plane descended on a flight from Paris to Los Angeles. After consulting a doctor five day later, she learned that she had become permanently deaf in her left hear.[41] The sole question presented to the Court was "whether a loss of hearing proximately caused by normal operation of the aircraft's pressurization system is an 'accident' . . . ."[42] In finding that the plaintiff's hearing loss was not an "accident," the Court reasoned that the framers of the Warsaw Convention, on which the Montreal Convention is based, "specified that air carriers would be liable if an accident *caused* the passenger's injury. The text of the Convention thus implies that, however we define 'accident,' it is the *cause* of the injury that must satisfy the definition rather than the occurrence of the injury alone."[43] Looking to the interpretation of other signatories of the treaty, the Court noted that European scholars have defined "accident" to require a passenger's injury to be caused by an unexpected event "other than the normal operation of the plane."[44]

---

[39] 470 U.S. 392 (1985).
[40] *See id.* at 396.
[41] *See id.* at 394.
[42] *See id.* at 395.
[43] *See id.* at 398-99 (emphasis in original).
[44] *See id.* at 404.

7

Following the reasoning in *Saks*, courts have found that, when airline personnel play no causal role in the commission of the tort, no "accident" has occurred.[45] For instance, in *Garcia Ramos v. Transmeridian Airlines, Inc.*, the plaintiff boarded her flight from Puerto Rico to the Dominican Republic.[46] While seated, an unidentified passenger crossed in front of the plaintiff to reach the window seat.[47] As he moved to step past the plaintiff, the passenger lost his balance and fell onto the plaintiff, fracturing her arm.[48] Relying on *Saks*, the Court held that an incident does not fall within the "operation of the aircraft" if that event is not within the airline's purview or control.[49] Concerning the plaintiff's incident, the court held that "the passenger stepping over [the plaintiff] had no relation to the operation of the aircraft, nor did it require aid of any flight crew personnel." Accordingly, the court dismissed the plaintiff's claim under the Warsaw Convention, stating that "[b]ecause the assistance of the flight crew was never sought and because there was nothing about the circumstances that would naturally require the assistance of the crew, there was no malfunction or abnormality in the aircraft's operations."[50]

Similarly, in *Gotz v. Delta Airlines, Inc.*,[51] Gotz and his wife arrived in Boston from Paris. Gotz boarded his connecting flight with a heavy carry-on bag and asked the flight attendant to stow his bag in the front of the plane.[52] The flight attendant refused and directed Gotz to place his bag in an overhead compartment.[53] In trying to place his bag in that compartment, Gotz tore the rotator cuffs in both shoulders.[54] Gotz filed suit under the Warsaw

---

[45] *See, e.g., Garcia Ramos v. Transmeridian Airlines, Inc.*, 385 F. Supp. 2d 137 (D. P.R. 2005).
[46] *See id.* at 139.
[47] *See id.*
[48] *See id.*
[49] See id. at 142.
[50] *See id.* at 143.
[51] 12 F. Supp. 2d 199 (D. Mass. 1998).
[52] *See id.* at 200.
[53] *See id.*
[54] *See id.*

Convention against the air carrier, Delta Airlines, and both parties filed motions for summary judgment.[55] In granting Delta's motion for summary judgment, the *Gotz* Court held that no accident occurred under the convention. The court emphasized that an accident cannot fall within the operation of the aircraft if that event is not within the airline's purview or control.[56] Following the reasoning in *Saks* and *Garcia*, the court held that Gotz presented no evidence that his claim involved Delta, and his injuries bore "no relation to the operation of the aircraft."[57]

Further, in *Goodwin v. British Airway PLC*,[58] the plaintiff began to disembark from the airplane, and as she approached the front of the aircraft, she paused to shake hands with a flight attendant stationed at the aircraft's door.[59] The flight attendant warned the plaintiff to be careful of the lip when stepping off the plane, yet the plaintiff lost her balance and the tip of her foot slid into the opening between the jet way and the aircraft.[60] The plaintiff testified that she was bumped by another passenger as she exited the plane.[61] In finding that the plaintiff's claims did not fall within the Montreal Convention, the court held that the plaintiff's injuries were not related to the operation of the aircraft. Quoting Professor Goedhuis, the reporter for the drafting of the Warsaw Convention, the court noted that "[t]he carrier does not guarantee safety; he is only obligated to take all the measures which a good carrier would take for the safety of his passengers."[62] In analyzing the plaintiff's claim, the court held that there was no evidence that

---

[55] *See id.* at 200-01.
[56] *See id.* at 204 (citing *Price v. British Airways*, 1992 WL 170679 (S.D.N.Y. 7/7/1992); *Stone v. Cont'l Airlines, Inc.*, 905 F. Supp. 823 (D. Haw. 1995); *Warshaw v. Trans World Airlines, Inc.*, 442 F. Supp. 400, 413 (E.D. Pa. 1977)).
[57] *See id.*
[58] 2011 WL 3475420 (D. Mass. 8/8/2011).
[59] See id. at *2.
[60] *See id.*
[61] *See id.*
[62] *See id.* at *5.

9

the incident was in the airline's "purview or control."[63] The court emphasized that the plaintiff did not contend that "the airline directly caused her injuries, nor [did] she aver that she sought any affirmative assistance from the flight crew . . . there [was] no evidence that conditions during disembarkation on April 17, 2008, were out of the ordinary."[64] Thus, the court granted British Airways' motion for summary judgment and dismissed the plaintiff's case.

Here, Plaintiff testified that the flight attendants were present on the aircraft when she deplaned,[65] yet she did not ask for help to get off the airplane or to navigate the airport.[66] As reasoned in *Garcia*, "[b]ecause the assistance of the flight crew was never sought and because there was nothing about the circumstances that would naturally require the assistance of the crew, there was no malfunction or abnormality in the aircraft's operations."[67] Further, unlike in *Garcia*, *Gotz*, and *Goodwin* in which the plaintiffs fell *inside the airplane*, Ms. Boyd fell approximately ten to fifteen minutes away from the airplane in a corridor for which there is no evidence that Lufthansa controls.[68] If the *Garcia*, *Gotz*, and *Goodwin* plaintiffs were not within the purview or control of the airline while inside the plane, Ms. Boyd was even further outside of Lufthansa's purview and control when she fell ten to fifteen minutes away from the aircraft. Accordingly, Plaintiff's fall does not constitute an accident under the Montreal Convention, and Plaintiff's claim should be dismissed.

### 2. **Plaintiff was not "embarking or disembarking" from the aircraft.**

Plaintiff's claim also fails because she was not "disembarking" from Flight 440 when she fell. The U.S. Fifth Circuit has recognized that the phrase "in the course of any of the operations

---

[63] *See id.* at *6.
[64] *See id.*
[65] *See* Exhibit B, Depo. of Fay Boyd at 113:7-13.
[66] *See id.* at 82:17 – 83:7.
[67] *See Garcia* at 143.
[68] *See* Exhibit B, Depo. of Fay Boyd at 98:12 – 99:1; Exhibit C, Depo. of Marion S. Boyd at 43:7-12; Exhibit D, Depo. of Ashley Scheibal at 25:5-9; Exhibit E, Depo. of Jennifer Pecot at 28:18-20.

of embarking" within the Montreal Conventions "strongly suggests that there must be a tight tie between an accident and the physical act of entering [or leaving] the aircraft."[69] Thus, to determine whether a claimant was in the process of disembarking at the time of injury, courts focus on three factors: (1) the passenger's activity at the time of the injury, (2) where the passenger was located, and (3) the extent to which the carrier was exercising control over the passenger at the moment of injury.[70]

A federal court in New York exhaustively analyzed the tripartite test for the "embarking or disembarking" element of the Montreal Convention in *Rabinowitz v. Scandanavian Airlines*.[71] There, the court recognized that courts have "consistently refused to extend coverage of the Warsaw Convention to injuries incurred within the terminal, except in those cases in which plaintiffs were clearly under the direction of the airlines."[72] *Rabinowitz* noted that even before clearing customs, passengers are not automatically determined to be "disembarking" from their international flight.[73] As the court recognized, while a passenger may not be a "free agent roaming the airport at will" before clearing customs, the passenger is "free to mix with international travelers who had not yet cleared customs and roam at will through any part of the terminal reserved for such travelers."[74] "Merely assist[ing] passengers off the plane and toward customs" does not constitute an airline's control over a passenger's movements.[75]

In this case, Plaintiff was not under the direction of Lufthansa when she fell. She was approximately ten to fifteen minutes from the airplane. Plaintiff has no evidence that Lufthansa

---

[69] *See Bridgeman v. United Cont'l Holdings*, 552 Fed. App'x 294, 297 (5th Cir. 2013) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 317 (1st Cir. 1995)).
[70] *See Fedelich v. Am. Airlines*, 724 F. Supp. 2d 274, 284 (D.P.R. 2010) (relied upon by the Fifth Circuit in *Bridgeman*, 552 Fed. App'x at 297).
[71] *See* 741 F. Supp. 441 (S.D.N.Y. 1990).
[72] *See id.* at 446.
[73] *See id.*
[74] *See id.*
[75] *See id.* at 447.

11

controlled the corridor in which Plaintiff fell, and none of the deponents have testified that Lufthansa controlled Plaintiff's movements. Indeed, no reason existed for Lufthansa to control Ms. Boyd's movements after exiting the aircraft because she failed to ask for any help getting off the plane or navigating the Airport.

Therefore, this Court should dismiss Plaintiff's claims as she was not "disembarking" from the airplane at the time of her fall and thus her claim does not fall within the Montreal Convention.

### III. CONCLUSION

Plaintiff's claims against Lufthansa fail as a matter of law because she did not suffer an "accident" while "disembarking" from Flight 440 as defined under the Montreal Convention. Thus, and for the foregoing reasons, Lufthansa submits that this Court should dismiss Plaintiff's claims against it with prejudice and at Plaintiff's cost. Lufthansa further moves for all good and equitable relief which this Honorable Court deems sufficient.

Respectfully submitted,

**DAIGLE FISSE & KESSENICH**
By: /s/ *John M. Dubreuil*
John M. Dubreuil (LA. 20792)
jdubreuil@daiglefisse.com
Katy B. Kennedy (LA 31808)
kkennedy@daiglefisse.com
Paul R. Trapani, III (LA 32735)
ptrapani@daiglefisse.com
227 Highway 21
Madisonville, LA  70447
P.O. Box 5350
Covington, LA  70434
Telephone:  (985) 871-0800
Facsimile:  (985) 871-0899
***Attorneys for Deutsche Lufthansa Aktiengesellschaft a/k/a Deutsche Lufthansa AG***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 1st day of April, 2015, a copy of the foregoing Answer to Plaintiff's Original Complaint was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

/s/John M. Dubreuil