```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF LOUISIANA


FAY BOYD                                      CIVIL ACTION

v.                                            NO. 14-1260

DEUTSCHE LUFTHANSA AKTIENGESELLSCHAFT         SECTION "F"
a/k/a, d/b/a LUFTHANSA GERMAN AIRLINES
a/k/a DEUTSCHE LUFTHANSA AG
```

ORDER AND REASONS

Before the Court is Deutsche Lufthansa Aktiengesellschaft a/k/a Deutsche Lufthansa AG's Motion for Summary Judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This litigation concerns an international airline's liability to a passenger who fell and broke her hip while walking to the U.S. Customs area of a Houston airport.

After traveling to Cairo, Egypt, Fay Boyd and her husband, Marion Boyd, their daughter, Jennifer Pecot, and the Boyd's granddaughter, Ashley Scheibal, returned to the United States on June 2, 2013 on Lufthansa Flight Number LH 440 from Frankfurt, Germany to Houston, Texas. Having been upgraded to business class, Mr. and Mrs. Boyd were seated near the front of the airplane. When Flight 440 landed at George Bush Intercontinental Airport, Mr. and

1

Mrs. Boyd deplaned first, before the full flight of passengers who followed them.  Having stepped off of the plane without requesting assistance for herself,[1] Mrs. Boyd was walking a short distance (about 10 feet) behind Mr. Boyd, who was being pushed in a wheelchair by an attendant.[2]  Mr. and Mrs. Boyd, along with other passengers, were in a wide corridor of the airport, heading toward Customs.  During part of her walk toward Customs, Mrs. Boyd traveled along a moving walkway (or horizontal escalator).  At some point,[3] Mrs. Boyd alleges that she was knocked to the ground by another hurried passenger, causing her to fall and break her left hip.[4]  None of Mrs. Boyd's family members witnessed the incident.

---

[1] Although Mrs. Boyd's legs become numb when she is seated for a long period of time, she did not advise any flight attendants servicing Flight 440 that she needed help exiting the plane or navigating the airport, and no one at Lufthansa refused to help her.

[2] Presumably, the attendant was an airport employee, who was waiting to transport Mr. Boyd when the flight arrived.

[3] The parties dispute whether the incident happened relatively close in time to deplaning, or whether it happened during the 10 to 15 minute walk from deplaning, near the Customs area.  There is also conflicting evidence regarding whether Mrs. Boyd fell while she was on the moving walkway, or whether she fell on the floor.

[4] There is a conflict in the record regarding whether another passenger knocked down Mrs. Boyd, or whether she simply fell.  The incident reports are consistent with what Mrs. Boyd's family members say that she told them when they came upon her on the ground shortly after she fell: that another passenger knocked her down and hurried off without checking on her to see if she was okay.  Yet Mrs. Boyd testified in her deposition that "Nobody pushed me or hurt me or shoved me or anything like that."

Some unidentified woman wearing an unidentified uniform arrived on scene and called the paramedics.

On June 2, 2014 Mrs. Boyd sued Deutsche Lufthansa Aktiengesellschaft a/k/a or d/b/a Lufthansa German Airlines a/k/a Deutsche Lufthansa AG,[5] seeking to recover for her injuries under the Montreal Convention. In her complaint, the plaintiff alleges that Lufthansa failed to allow her enough time to disembark before allowing the other passengers on the plane to disembark.[6] In particular, she alleges that as she was disembarking, another passenger in a rush collided with her, knocking her to the ground and causing her to fracture her femur. Lufthansa submits that this lawsuit was the first notification it had that the plaintiff had been injured. Lufthansa now seeks summary relief dismissing Mrs. Boyd's claims.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to

---

[5] In her complaint, Ms. Boyd incorrectly identified Deutsche Lufthansa AG as a separate entity and defendant.

[6] Had Lufthansa assisted her in exiting the aircraft, while delaying other passengers, or delayed her exit until the other passengers disembarked, she would not have been injured, she alleges.
  Ms. Boyd also suggests that Lufthansa failed to allow her husband (who required the assistance of a wheelchair) enough time to disembark.

3

judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot

defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

*A.*

Lufthansa submits that summary relief in its favor is warranted because the plaintiff did not suffer an "accident" while "disembarking" from Flight 440, as defined by the Montreal Convention and governing case literature.

The Montreal Convention[7] is a multilateral treaty that

---

[7] More formally known as the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, it became effective on November 4, 2003. 2242 U.N.T.S. 309, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000). See Bridgeman v. United Continental Holdings, Inc., 552 Fed. Appx. 294, 296 (5th Cir. 2013).

5

"governs the rights and liabilities of passengers and carriers in international air transportation."  Galbert v. W. Carribean Airways, 715 F.3d 1290, 1292 (11th Cir. 2013).  As such, the Montreal Convention preempts state law causes of action concerning international carriage of persons, baggage, and cargo.  See El Al Israel Airlines v. Tsui Yuan Tseng, 525 U.S. 155, 176 (1999); see also Montreal Convention, Art. 29 ("[A]ny action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention....").  The Montreal Convention unifies and replaces its predecessor, the Warsaw Convention, by harmonizing "the hodgepodge of supplementary amendments and intercarrier agreements."  See Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776, 789 (7th Cir. 2008).  Thus, case literature interpreting the Warsaw Convention applies to cases interpreting substantially similar provisions of the Montreal Convention.  See Bridgeman v. United Continental Holdings, Inc., 552 Fed. Appx. 294, 297 n.1 (5th Cir. 2013)(citing cases).

   Setting forth the specific conditions that a passenger must establish to recover from an international air carrier, the parties do not dispute that Article 17 of the Montreal Convention governs

the plaintiff's claims here.[8]  It provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger *upon condition only that* the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention, Art. 17(1)(emphasis added). Thus, the text of the treaty limits recovery to an "accident" that occurs either "on board the aircraft" or "in the course of any of the operations of embarking or disembarking." Because these terms are not explicitly defined in the text of the Convention, courts resort to case literature for guidance. Although neither the Montreal Convention nor its predecessor defined "accident," the Supreme Court has instructed that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." Air France v. Saks, 470 U.S. 392, 394 (1985). Explaining further:

> This definition should be flexibly applied after assessment of all the circumstances surrounding a passenger's injuries. . . . For example, lower courts in this country have interpreted Article 17 broadly enough to encompass torts committed by terrorists or fellow passengers. In cases where there is contradictory evidence, it is for the trier of fact to decide whether an "accident" as here defined caused the passenger's injury. But when the injury indisputably results from the passenger's own internal reaction to the usual,

---

[8] That is, the parties do not dispute the fact that Lufthansa Flight Number 440 constituted international transportation within the meaning of the Convention; both Germany and the United States are parties to the Convention.

> normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply.

Id. at 405-06 (internal citations omitted). Notably, the Supreme Court considered the French legal meaning of the term "accident", found that it paralleled British and American jurisprudence, and determined that the definition of "accident" under the Convention cannot be conceptually divorced from causation. Id. at 399-400 (considering that "accident" is "defined as a fortuitous, unexpected, unusual, or unintended event" and, consequently, "[t]he text of the Convention suggests that the passenger's injury must be caused by an unusual or unexpected event."). Thus, courts must distinguish "between an accident which is the *cause* of the injury and an injury which is itself an accident." See id. at 398 (explaining that the "text of Article 17 refers to an accident *which caused* the passenger's injury, and not to an accident which *is* the passenger's injury.")(emphasis in original).

The Supreme Court acknowledged that proving causation is a difficult task and instructed that the passenger must prove only "that some link in the chain was an unusual or unexpected event external to the passenger." Id. at 406.[9] The Supreme Court later

---

[9] Applying this principle, the Supreme Court determined in Saks that the passenger had not been subjected to such an "accident." Valerie Saks was rendered permanently deaf in her left ear after feeling severe pressure and pain during a descent while aboard an Air France jetliner traveling from Parish to Los Angeles. Id. at 394. The Ninth Circuit reversed a district court's grant of summary judgment in favor of the airline, rejecting the district

explained that "it is the cause of the injury--rather than the occurrence of the injury--that must satisfy the definition of 'accident.'" Olympic Airways v. Husain, 540 U.S. 644, 650 (2004). There, a passenger died from an asthma attack while on board a flight, after having been seated a mere three rows from smoking passengers, despite his wife's persistent requests that he be moved. Id. The Court determined that a flight attendant's failure to assist in moving the passenger away from smoking passengers, despite his wife's insistence that he was allergic to smoke, was an "unexpected or unusual event or happening" and, therefore, constituted an accident under the Convention. Id.

Courts have recognized that the "accident" predicate is expansive enough to encompass passenger-on-passenger torts. See Saks, 470 U.S. at 405 (noting that "lower courts . . . have interpreted Article 17 broadly enough to encompass torts committed by terrorists or fellow passengers"). Of course not all torts committed by fellow passengers are "accidents." Some courts apply a two-part test to determine whether an "accident" occurred: the evidence must demonstrate that "(1) an unusual or unexpected event that was external to [the plaintiff] occurred, and (2) this event

---

court's finding that normal cabin pressure changes are not "accidents." Id. In so doing, the Ninth Circuit embraced a definition of accident that included normal cabin pressure changes. The Supreme Court reversed, holding that Saks could not meet her burden of showing that an "accident" caused her injury simply by showing that her injury was caused by the normal operation of the aircraft's pressurization system. Id.

9

was a malfunction or abnormality in the aircraft's operations." See, e.g., Goodwin v. British Airways PLC, No. 09-10463, 2011 WL 3475420, at *4 (D. Mass. Aug. 8, 2011)(citing Gotz v. Delta Air Lines, Inc., 12 F. Supp. 2d 199, 201-02 (D. Mass. 1998)).  Although some courts are critical and reject application of this second element, it appears to reasonably probe a link between the passenger's injury and the defendant airline consistent with Saks and Husain.  Determining whether there is an abnormality in the aircraft includes consideration of "direct flight crew involvement" such as the obligation (but failure) of the flight crew to secure an overhead bin, which contained liquor bottles, that opened during take-off causing injury, or the flight crew's refusal to assist, when asked, or negligent assistance.  See Goodwin, 2011 WL 3475420, at *5 (citations omitted).

In addition to proving that an "accident" caused the passenger's injury, a plaintiff must also prove the "embarking or disembarking" prerequisite for recovery; another concept left undefined by the Convention.  In determining whether alleged misconduct took place "on board the aircraft or in the course of any of the operations of embarking or disembarking", the Fifth Circuit has remarked that this requirement "strongly suggests that there must be a tight tie between an accident and the physical act of entering [or leaving] the aircraft."  See Bridgeman, 552 Fed. Appx. at 297 (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313,

10

317 (1st Cir. 1995)). Factors to consider when determining whether a passenger was in the process of disembarking include: (1) the passenger's activity at the time of the injury, (2) where the passenger was located, and (3) the extent to which the carrier was exercising control over the passenger at the moment of injury. See Day v. Trans World Airlines, Inc., 528 F.2d 31 (2d Cir. 1975), cert. denied, 429 U.S. 890 (1976)(adopting tripartite test to determine when passengers are deemed to be in the course of "embarking" within the meaning of Article 17); see also Bridgeman, 552 Fed. Appx. at 297 (citing Fedelich v. Am. Airlines, 724 F. Supp. 2d 274, 284 (D.P.R. 2010) and McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 317 (1st Cir. 1995)); see also Marotte v. Am. Airlines, Inc., 296 F.3d 1255, 1260 (11th Cir. 2002). Courts have "consistently refused to extend coverage of the Warsaw Convention to injuries incurred within the terminal, except in those cases in which plaintiffs were clearly under the direction of the airlines." See Rabinowitz v. Scandanavian Airlines, 741 F. Supp. 441, 446 (S.D.N.Y. 1990). A passenger that has not yet cleared customs may nevertheless remain "free to mix with international travelers who had not yet cleared customs and roam at will through any part of the terminal reserved for such travelers[,]" and, therefore, is not automatically "disembarking" from an international flight. Id. Notably, that an airline "[m]erely assist[s] passengers off the plane and toward customs" does not constitute an airline's control

11

over a passenger's movements.  Id. at 447.

*B.*

Challenging the plaintiff's evidentiary support for both prongs of the accident test, as well as the disembarkment determination, Lufthansa submits that summary relief in its favor is appropriate for three separate reasons.  First, Lufthansa contends that Mrs. Boyd's fall was not caused by an external event and, therefore, was not an "accident" within the meaning of the Montreal Convention.  Second, Lufthansa contends that Mrs. Boyd's fall does not relate to a malfunction or abnormality of the operations of its aircraft and therefore fails the second prong of the "accident" analysis.  Third and finally, Lufthansa contends that Mrs. Boyd has submitted no evidence to suggest that she was under Lufthansa's direction when she fell such that she was not "disembarking" and, therefore, that her claim is outside the scope of the Montreal Convention.

Examining the circumstances surrounding the plaintiff's injury, the Court considers each of the defendant's grounds for summary relief.

1. External Event?

Lufthansa contends that there is no evidence that an event outside some internal condition of Mrs. Boyd caused her fall such that she cannot demonstrate that her fall was caused by an external

event.  On this record, the Court disagrees.  A genuine dispute concerning a material fact exists regarding whether Mrs. Boyd's fall and resulting injury was "external to" Mrs. Boyd.  Lufthansa contends that Mrs. Boyd's fall was not caused by an external event, suggesting instead that her fall resulted from her own fragility, not unlike the fall Mrs. Boyd took at home when she tripped over a pillow walking to the bathroom (resulting in a right hip fracture) sometime after the incident in the airport.  Lufthansa points to this evidence in the record to support its position on the external event prong: Mrs. Boyd's feet become numb after sitting for long periods of times such as when sitting on a more than 10 hour flight; Mrs. Boyd testified, unequivocally, in her deposition that "Nobody pushed me or hurt me or shoved me or anything like that."  But Lufthansa disregards conflicting evidence; Mrs. Boyd points to evidence that would support a finding that her injury resulted from an external event: the accident reports (which report "83 yr old white female complaining of left inner leg pain and swelling due to falling at the airport. [patient] foot caught on someone else['s] leg causing the fall")[10] as well as the testimony of Mrs. Boyd's family members, who have testified that when they came upon her lying on the ground, Mrs. Boyd told them that a man had knocked her

---

[10] Another EMS patient care report notes "[arrived on scene] to find female laying on right side [complained of] being accidentally knocked down by a hurry[ing] passenger . . . ."

down and hurried along.[11] And Mrs. Boyd's seemingly unequivocal statement that nobody pushed her is called into question by her other testimony that she did not recall her fall and other evidence suggesting possible memory problems. The Court will not weigh the competing evidence. If at trial the jury is persuaded by the evidence suggesting that Mrs. Boyd's injury resulted from a physical collision with another passenger, "[s]uch an event is quintessentially external." See Garcia Ramos v. Transmeridian Airlines, Inc., 385 F. Supp. 2d 137 (D.P.R. 2005). Viewing the evidence in the light most favorable to Mrs. Boyd, a classic factual controversy persists on this issue. But the Court's analysis does not stop there.

2. Abnormality of the Aircraft: Flight Crew Involvement?

Lufthansa submits that the plaintiff has failed to submit evidence, or even argue that Lufthansa played a causal role in her fall. Indeed, the plaintiff has failed to controvert Lufthansa's showing on this second element of the accident test, which is applied by some courts. The record shows that the flight

---

[11] Mrs. Boyd's daughter, Ms. Pecot, testified that once she arrived at the scene, her mother told her "that she got knocked into by a man, with his little carry-on luggage. They fell. She even had to roll over . . . or he would have fallen on top of her. He hopped up, took off, and she couldn't get up. She was real upset that he didn't inquire about her, if she was okay." Mrs. Boyd's granddaughter offers similar testimony. After deplaning and walking for 10 to 15 minutes, Ms. Scheibal testified that she came upon her grandmother laying on the floor. "When I asked her what happened, she said that a man had knocked her over."

attendants were present on the aircraft when Mrs. Boyd deplaned, she did not ask for help exiting the plane or navigating the airport. There is nothing in the record to demonstrate that the person that allegedly collided with Mrs. Boyd was a passenger from Flight 440. Accordingly, the Court agrees that, if indeed this second element of the accident test is controlling, the plaintiff has failed to prove this element of her claim. See Garcia Ramos, 385 F. Supp. 2d at 142 (holding that there was no "accident" because there was no direct flight crew involvement in causing the injury, where a fellow passenger lost his balance and fell onto the plaintiff, fracturing her arm). However, although the Court agrees an "accident" under the Montreal Convention must bear some relation to the defendant's operation of the aircraft, the Court need not resolve the conflict in the case literature as to whether this second element of the accident test unduly limits recovery under the Convention in contravention of the text of the treaty and Saks. See, e.g., Arellano v. American Airlines, Inc., --- F. Supp. 3d ---, No. 14-23502, 2014 WL 6682591, at *4 (S.D. Fla. Nov. 25, 2015)(declining to apply second element of "accident" inquiry, but noting that where airline personnel play no causal role in the commission of the tort, courts have found no "accident" occurred). This is so because the plaintiff has failed to establish another essential element of her case, that she was disembarking when she broke her hip.

    3.    In the Course of Disembarking: Nexus between Accident and Leaving Aircraft?

Lufthansa submits that there are no genuine issues of material fact that the plaintiff was not "disembarking" from Flight 440 when she fell. The plaintiff counters that there is some conflict concerning where and when she fell that defeats summary judgment. The Court disagrees.

Any connection between the alleged collision with another passenger and "the operations of . . . disembarking" are tenuous and insufficient to survive summary judgment when the plaintiff must show that there is "a tight tie between an accident and the physical act of [leaving] an aircraft." See Bridgeman, 552 Fed. Appx. at 297-98 (citation omitted). The record establishes no connection between the plaintiff's physical act of exiting the aircraft and the alleged collision with the passenger, whether on the moving pathway or on the stationary floor of the wide corridor leading to customs.

Consideration of the Day factors demonstrates that the plaintiff has failed to establish this essential element of her claim. First, the plaintiff's activity at the time of her fall was that she was simply walking toward customs along with many other passengers in a wide corridor.[12] Second, although Mrs. Boyd's

---

[12] As already noted, the plaintiff had exited the plane before other passengers and had not asked the flight attendants for any assistance.

16

specific location at the time of her fall is somewhat disputed,[13] there is no dispute regarding her general location: that she had deplaned and was walking in a wide corridor that contained moving pathways and other passengers. Third, and most significantly, there is absolutely no evidence that Lufthansa had control over the wide corridor in the airport, or that it was exercising any control over the passengers where Mrs. Boyd fell. This control factor is critical. Those cases which hold that a passenger was embarking or disembarking found that the passenger was being directed by the airline, or that the airline leased or owned the area where the plaintiff was injured, or that the airline otherwise exercised direction or control over the passenger at the time of the injury. See, e.g., Ugaz v. American Airlines, Inc., 576 F. Supp. 2d 1354 (S.D. Fla. 2008)(airline maintained the gate area and sterile area in which passenger fell); Alleyn v. Port of Authority of New York, 58 F. Supp. 2d 15 (E.D.N.Y. 1999)(airline leased, operated, and exclusively controlled area where the passenger was injured; airline exclusively used the particular escalator for its arriving passengers from Flight 149).

---

[13]There is debate about whether or not there were restaurants in the area, whether there were passengers in the corridor from other flights, whether or not she fell "pretty far" from the airplane and "right before entering customs," but there is no evidence on these points other than conflicting memories of the plaintiff and her family. The EMS report and Houston Airport Dispatch Call Log suggest that the fall occurred about 18 minutes after the arrival of Flight 440.

Here, the plaintiff has submitted no evidence that she was being directed by Lufthansa at the time of her fall, or even that any Lufthansa employees were in the vicinity where she fell, let alone controlling her movements.[14] There is no evidence that the gentleman pushing Mr. Boyd's wheelchair was a Lufthansa employee (rather than an airport employee), or that the woman in an unidentified uniform that tended to Mrs. Boyd after her fall was a Lufthansa employee. In fact, Lufthansa submits, and the plaintiff does not contest, that it first knew about Mrs. Boyd's fall when she filed this lawsuit. Summary judgment is proper if the party opposing the motion fails to establish an essential element of her case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). With respect to the disembarkation element, and in particular the control factor, the plaintiff has done no more than simply deny the allegations raised by the moving party; she has failed to come forward, as required by the summary judgment procedure, with

---

[14] There is no dispute that Mrs. Boyd was acting under her own direction and was no longer under the direction or control of Lufthansa. Maugnie v. Compagnie Nationale Air France, 549 F.2d 1256 (9th Cir.), cert. denied, 431 U.S. 974 (1977)(plaintiff not injured in the course of disembarking because she was acting under her own direction and was no longer under the direction or control of Air France; plaintiff had deplaned from the aircraft and was proceeding to the gate of another carrier to make a connecting flight when she slipped and fell in a passenger corridor leading to the main area of the terminal building). Moreover, Mrs. Boyd was headed toward immigration "a condition to entry apparently imposed by the host country, not a condition to disembarking imposed by the airline." Rabinowitz v. Scandinavian Airlines, 741 F. Supp. 441, 446 (S.D.N.Y. 1990).

competent evidence, such as affidavits or depositions, to buttress her claim. Accordingly, the defendant's motion for summary judgment is GRANTED. The plaintiff's claims are hereby dismissed.

New Orleans, Louisiana, June 3, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE